## MEANS, Assignee, *v.* MONTGOMERY and others.

*(Circuit Court, W. D. North Carolina.* December Term, 1884.)

1. FRAUDULENT CONVEYANCES—PREFERRING CERTAIN CREDITORS IN ASSIGNMENT.

   At the common law an insolvent debtor has the right to make an assignment in trust for the benefit of his creditors, and he may give a preference to *bona fide* creditors to whom he feels under special and honest obligations for previous favors conferred, or for any other honest and meritorious consideration.

2. SAME—RULE IN NORTH CAROLINA—EVIDENCE—QUESTION FOR JURY.

   The courts in North Carolina have always been very cautious in finding fraud in a written instrument *as a matter of law*, and where presumptions of fraud arise upon *the face of the deed* they have uniformly held that the parties are entitled to introduce evidence to explain suspicious transactions and rebut presumptions of fraud; and in cases at law such questions must be determined by the jury.

3. SAME—DEED OF TRUST FRAUDULENT AS MATTER OF LAW, WHEN.

   To render a deed of trust fraudulent as matter of law, there must appear upon its face some plain and express provision for the personal benefit of the grantor, or some stipulation which is wholly irreconcilable with an honest and legal purpose of paying, within a reasonable time, the debts of the grantor.

4. SAME—RETENTION OF POSSESSION WITH POWER OF DISPOSITION RENDERS DEED VOID, WHEN.

   If there is a provision in a duly-registered deed of trust that the property conveyed shall remain in the possession of the grantor, and that *he shall have the control and disposition of the same,* the questions whether the deed is fraudulent on its face, or is presumptively fraudulent, depend upon the purposes and facts that clearly appear from a fair construction of the express terms of the deed. If provisions are made in the deed for the continuance of the possession of the property in the grantor for an unreasonable time, or for the express benefit of the maker or his family, or for any other purpose which is manifestly wrong or inconsistent with the honest exercise of his legal right of making preferences among his creditors, then the deed is fraudulent in law on its face. Where the dishonest purposes of the grantor are not expressly declared in the deed, or cannot be clearly inferred from the terms and acts set forth, but the terms and acts afford reasonable ground to suspect an evil and unlawful intent, then the parties interested in sustaining the deed must rebut the presumptions of fraud which arise from a fair construction of the instrument. If the provisions of the deed manifest a real purpose of making satisfaction to *bona fide* creditors, in the order mentioned, in a reasonable time, in a convenient manner, with no unlawful intent towards other creditors, and without any substantial benefit to the grantor, then no presumption of fraud can arise on the face of the deed.

5. SAME—CHARACTER OF BUSINESS.

   There is nothing suspicious or inconsistent with honesty and fair dealing, or prejudicial to the legal rights of creditors, in a provision in a deed of trust allowing the grantor of a stock of miscellaneous merchandise, which is not consumable in the use, to remain in possession and continue to sell the goods for cash, and deposit the proceeds under the supervision and control of the trustee, with a view to wind up the business in a convenient time, to the best advantage of the creditors.

6. SAME—SURPLUS TO BE PAID GRANTORS.

   A provision in a deed directing the surplus, after payment of debts, to be paid over to the grantor, is not fraudulent, and does not give rise to a legal presumption of fraud, as such rights would arise to the grantor by implication of law.

7. SAME—PREFERENCE.

   An insolvent debtor, or one so greatly embarrassed that an immediate sale under execution would necessarily result in injury to many of his creditors, who executes a deed of trust for the benefit of all of his creditors, or to give a preference to his sureties, to prevent one creditor by legal process from obtaining full satisfaction of his debt, to the injury of other creditors, commits no fraud.

8. SAME—SCHEDULE OF DEBTS AND CREDITORS.
    Under the statute in North Carolina, or at common law, it is not necessary for a grantor in a deed of trust to set forth a schedule of the property conveyed, where there is a sufficient general description of such property, or to attach to such deed a schedule of debts and creditors.

9. SAME—RELATIONSHIP OF PARTIES.
    A person who assails a conveyance on the ground of the relationship of the parties must show that the debts secured are not *bona fide*, or that there is something feigned or simulated, or that the parties were influenced by some sinister motive.

10. SAME—FRAUDULENT INTENT.
    The burden of proof is upon a party attacking such a deed to establish a fraudulent intent.

11. SAME—CONCURRENCE AS TO INTENT.
    To render a deed founded on a valuable consideration void for fraud, both parties must concur in a fraudulent intent, or the grantee must have notice of such intent, or must in some way be privy to the wrongful design.

12. SAME—DEED SUSTAINED.
    Upon examination of the evidence and circumstances of this case, and upon a construction of the deed in controversy, *held* that the deed should be sustained.

In Equity.

*Jones & Johnston* and *A. Burwell*, for plaintiff.

*Bynum & Grier* and *Platt D. Walker*, for defendants.

DICK, J.  The questions of law involved in this case have been frequently debated and considered in the state and national courts, and there has been much fluctuation of opinion and conflict of decision. This want of uniformity of judicial decisions has been produced to a considerable extent by the peculiar facts and circumstances of the adjudged cases, by diversity of views as to public policy, and the varying innovations made in the doctrines of the common law by statutes of fraud in the several states.

The counsel on both sides have carefully prepared printed briefs and arguments, in which they have cited, arranged, and commented upon the leading authorities on the subject.   The decisions cannot be reconciled, and I will not attempt to follow the counsel in the course pursued in their elaborate arguments, or cite in this opinion the authorities relied upon, as they are so fully set forth in printed briefs.

In forming my opinion I have been influenced by what I regard as well-settled principles of justice and sound public policy, and have endeavored to follow the decisions of the supreme court of this state, as far as such decisions are applicable to the facts and circumstances of this case.   Upon questions of the character involved in this controversy, I feel bound to follow the decisions of the highest court of this state, and I do so willingly, as I concur in the opinions expressed.

The plaintiff, as assignee in bankruptcy of the defendant bankrupts, Montgomery & Dowd, seeks to have a deed declared invalid as fraudulent in law on its face, or as fraudulent in fact, because executed with a fraudulent intent on the part of the bankrupt grantors; and that such fraudulent intent was known and acquiesced in by the defendant grantees, or might have been ascertained by them upon

the reasonable inquiry which they ought to have made under the admitted facts and circumstances of this transaction.

The deed of trust was executed on the twenty-fourth of April, 1876, and was recorded on the eleventh of July, 1876. The petition in bankruptcy was filed against the defendant grantors on the twenty-first of December, 1876. As the deed was executed more than six months before the filing of the petition in bankruptcy, the provisions of the bankrupt act as to matters of fraud in the execution of deeds giving a preference to creditors do not apply, and this case must be determined by applying the doctrines of the common law as settled in this state. The deed in trust purports to convey all the stock of merchandise and firm property of the grantors to the defendants A. B. Davidson and C. Dowd, in trust for all the creditors of the firm, but gives a preference in payment to certain specified *bona fide* creditors. It does not appear that the grantors had any other property that could be reached by process of execution.

At the common law an insolvent debtor has the right to make an assignment in trust for the benefit of his creditors; and he may give a preference to *bona fide* creditors to whom he feels under special and honest obligations for previous favors conferred, or for any other honest and meritorious consideration. Most men feel that they are under strong moral obligations to indemnify and save harmless their sureties against liabilities incurred to enable them to carry on their business; and if such liabilities are *bona fide*, and such indemnity is made without any object of private advantage and with a legal and honest purpose, then there are no elements of fraud in such a transaction. Indemnity to sureties is usually afforded by securing the debts upon which they are liable; and the mere fact that the sureties to *bona fide* obligations are relatives of the principal debtor and grantor should not throw even a suspicion of fraud upon the transaction.

Nearly every deed of trust has the effect of delaying creditors in the enforcement of their claims by the ordinary process of the law, but such hindrance and delay is regarded by the law as incidental and unavoidable, and not as fraudulent, within the meaning of the statutes against fraudulent conveyances. By reference to many decisions it will be found that the supreme court of this state has always been very cautious in finding fraud in a written instrument *as a matter of law;* and in all cases where presumptions of fraud arise upon *the face of the deed*, the court has uniformly held that parties are entitled to introduce evidence to explain suspicious transactions, and rebut even strong legal presumptions of fraud, and in cases at law such questions must be determined by a jury. To render a deed of trust fraudulent as matter of law there must appear upon its face some plain and express provision for the personal benefit of the grantor, or some stipulation which is wholly irreconcilable with an honest and legal purpose of paying, within a reasonable time,

the debts of the grantor. Under the registry laws of this state deeds of trust and mortgages are required to be registered in the proper county before they are valid as against creditors and purchasers. The object of registry laws is to enable debtors to make an honest and beneficial use of their property in securing creditors and indorsers in the course of business; to prevent secret incumbrances and transfers of property; and to repel presumptions of fraud which might arise by the grantor's remaining in possession and dealing with property as apparent owner. Full notice is thus given of incumbrances and the purposes for which such deeds were executed, and no false credit can be gained by apparent ownership.

A deed of trust for the benefit of creditors is in the nature of a mortgage, and both are placed together in the provisions of our registry laws, and in many respects the same principles of law are applicable to both kinds of such conveyances. A regular mortgage of personal property is a transfer of the legal title upon condition as a security for the payment of a debt, or the performance of some other obligation; and if the condition is not complied with, the title of the mortgagee becomes absolute at law, and he has the right to take immediate possession.

A deed of trust is an assignment of property to a trustee for the purposes therein declared. It is usually made by a debtor who is in failing circumstances, with a view of securing all of his creditors equally, or giving some creditors a preference over others, and it is seldom practicable or prudent to make provision for the immediate sale of the property conveyed. In both kinds of conveyance the payment of the debts secured is usually deferred to some future day, and the mortgagor or trustor nearly always remains in possession until the mortgagee is entitled to have his money, or the trustee is bound by the terms of the deed to take possession of the property and make sale for the purposes of administering the trusts declared. This retaining of possession by the grantor is not sufficient evidence of fraud, as such conveyances are not valid against creditors and purchasers until they are registered, and registration gives publicity and notice of the transaction. Registration is generally held by the courts to be equivalent to the delivery of possession to the mortgagee or trustee.

In the absolute sale of a personal chattel, if the vendor retains the possession, the transaction is generally regarded as fraudulent as to persons who have been misled to their prejudice by such apparent ownership. But the difference is a marked one between a conveyance which purports to be absolute and a conveyance which, from its nature and design, or by its express terms, leaves the possession in the grantor under certain declared restrictions and incumbrances.

If there is a provision in a duly-registered deed of trust that the property conveyed shall remain in the possession of the grantor, and that *he shall have the control and disposition of the same*, the questions whether the deed is fraudulent on its face, or is presumptively

fraudulent, depend upon the purposes and facts that clearly appear from a fair construction of the express terms of the deed. If provisions are made in the deed for the continuance of the possession of the property in the grantor for an unreasonable time, or for the express benefit of the maker or his family, or for any other purpose which is manifestly wrong or inconsistent with the honest exercise of his legal right of making preferences among his creditors, then the deed is fraudulent in law on its face. Where the dishonest purposes of the grantor are not expressly declared in the deed, or cannot be clearly inferred from the terms and acts set forth, but the terms and acts afford reasonable ground to suspect an evil and unlawful intent, then the parties interested in sustaining the deed must rebut the presumptions of fraud which arise from a fair construction of the instrument.

If the provisions of the deed manifest a real purpose of making satisfaction to *bona fide* creditors, in the order mentioned, in a reasonable time, in a convenient manner, with no unlawful intent towards other creditors, and without any substantial benefit to the grantor, then no presumption of fraud can arise on the face of the deed.

We will now proceed to apply these principles of law in construing the deed set forth in the plaintiff's bill. Among others, there are the following provisions:

"The said parties of the first part are to remain in possession of the said property and choses in action, and continue to sell the goods for cash only, and to collect under the direction and control of the parties of the second part; the proceeds to be deposited weekly in the Commercial National Bank of Charlotte, N. C., and applied, under the direction of the parties of the second part, to replenish the stock by such small bills as may be agreed upon, and to the payment of the debts of said firm as follows."

There is nothing suspicious or inconsistent with honesty and fair dealing, or prejudicial to the legal rights of creditors, in a provision in a deed of trust allowing the grantor of a stock of miscellaneous merchandise, which is not consumable in the use, to remain in possession, and continue to sell the goods for cash in the usual course of trade, and deposit the proceeds under the supervision and control of the trustee, with a view to wind up the business in a convenient time to the best advantage of the creditors. He is familiar with the business, understands the run of trade, and knows the best methods of dealing with his regular customers. Common experience has shown that the best means of disposing of an old and broken stock of merchandise is to replenish the stock to a small extent with new articles in frequent demand and staple commodities which are calculated to induce new trade and the continuance of former custom. I cannot see how the provisions which we are considering could result in injury to the creditors of the firm, as the best method known to common experience was provided for rapidly disposing of the trust property to the advantage of creditors, and the proceeds of sale are se-

cured by being deposited weekly in bank, to be applied under the
direction of the trustees to the payment of debts. The trustees, by
accepting the trusts declared in the deed, assumed the duty and lia-
bility of having them faithfully executed.

By the arrangements made the grantors became the agents of the
trustees, and as such agents they were legally entitled to fair com-
pensation for services rendered in winding up the business for the
benefit of creditors, although there was no stipulation for that pur-
pose in the deed. If the compensation allowed by the trustees was
excessive, then a proper deduction can be made when an account is
taken for the purpose of adjusting and administering the trusts.
This subsequent matter of fact can in no way affect the validity of
the deed as matter of law, or give rise to any legal presumption of
fraud; but it may be considered as a circumstance tending to show
a concurrence of fraudulent intent in the execution of the deed. The
same rule applies to other transactions between the grantors and trus-
tees subsequent to the execution of the deed. If such transactions
have caused prejudice to the rights of creditors, the trustees may
have incurred liabilities for which they may be held responsible to
account upon their adjustment and settlement of the trust fund, and
may afford some evidence of a secret and collusive agreement with
the grantors at the time of the execution of the deed.

There is a provision in the deed about which I have had some diffi-
culty in forming a satisfactory opinion. The grantors had a clear
right to provide for the payment of the notes in the bank, or the re-
newals of the same, upon which the trustees were indorsers, and if
they agreed to pay 12 per cent. interest upon such loans, in common
fairness and honesty the agreed interest ought to be paid. I am not
so well assured of their right to stipulate for the payment "of any other
notes that may hereafter be given by said firm, and indorsed by said
parties of the second part, or either of them." This provision seems
to contemplate the continuance of the firm business for the benefit of
the grantors. This provision is not fraudulent as matter of law, but
gives rise to a presumption of fraud which, after careful considera-
tion, I think, is rebutted by the facts and circumstances developed in
the evidence in the cause.

The grantors believed that they were solvent at the time of the ex-
ecution of the deed, provided they could sell their firm property at
a fair value and realize a reasonable amount from the collection of
accounts and notes due them. The depreciation of property, the dull-
ness of the market, and the failure in collection of the debts due them
disappointed their reasonable expectations, and they found in a short
time that they were insolvent. I am satisfied that by the stipulation
for future advances their purpose was to render their assets more
available to satisfy the trusts declared, and that they did not contem-
plate any personal benefit until all their debts were paid. I am con-
firmed in this opinion by the fact that the grantors did not make any

new debts, but proceeded to reduce expenses and to sell their stock as rapidly as possible, with a view of winding up the business and paying their debts. The provision in the deed directing the surplus, after the payment of debts, to be paid over to the grantors is not fraudulent, and does not give rise to a legal presumption of fraud, as such rights would arise to the grantors by implication of law.

The last provisions in the deed, authorizing the trustees upon certain contingencies to take actual and personal possession of the goods, and make sales, etc., are not fraudulent, as they are not inconsistent with good faith towards the creditors, and are not so unreasonable or unusual in their character as to give rise to suspicion of wrong. Upon a careful consideration of the express terms of the deed, and the facts and circumstances which they set forth, I am of the opinion that upon a fair construction of the whole instrument it is not fraudulent in law. I am also of opinion that the legal presumptions of fraud which arise on the face of the deed have been fully rebutted by the evidence in the cause.

I will now proceed to examine and consider the allegations of the plaintiff, the answers of the defendants, and the evidence presented, for the purpose of determining the question of fact whether the deed was executed with a fraudulent intent on the part of the grantors, which was known and acquiesced in by the trustees. There is a well-settled rule of law that the burden of proving fraud in fact is upon the party who alleges it; and the proof is insufficient unless it creates a clear and full impression that the allegation is true. When legal presumptions of fraud arise on the face of a deed, then the party who claims under the deed must rebut such presumptions by satisfactory evidence, and his mere declaration of a want of fraudulent intent is not sufficient proof.

I will now consider the specification of the badges of fraud set forth in the brief, and forcibly urged in the argument of the counsel for the plaintiff:

(1) "The fact that the execution of the deed was concealed." (4) "Failure to record the deed for more than two months."

The evidence does not show any unusual effort to keep the execution of the deed from public notice. It was executed in the presence of a subscribing witness, who was not requested to keep the transaction a secret. The deed affected no one but the parties, and no one else had any interest in the matter. It deprived no creditor of any right until it was registered. The failure to register only enlarged the time for creditors to pursue the ordinary legal remedies for the collection of their debts. As to them, the deed had no valid existence until it was recorded, and they had no legal right to know of its existence until it affected their interests.

(9) "The deed made when the suit by Calvin Chestnut was pending against the assignors, and only recorded in time to anticipate the judgment in said suit."

A debtor who is unquestionably solvent, and has the means and resources from which enough might be realized to pay all of his debts, commits a fraud if he executes a deed of trust for the purpose of gaining time at the expense of creditors, in order to dispose of property to advantage and prevent a sacrifice by a sale for cash under process of law; but this rule does not apply to an insolvent debtor, or one so greatly embarrassed that an immediate sale under execution would necessarily result in injury to many of his creditors. Under such circumstances, it is an act of duty and not of fraud for a debtor to execute a deed of trust for the benefit of all creditors, to prevent one creditor, by legal process, from obtaining full satisfaction of his debt to the injury of other creditors. *Reed* v. *McIntyre*, 98 U. S. 511. The same principle will apply to a deed of trust in which the insolvent debtor honestly exercises his right at common law in giving a preference to sureties, or his *bona fide* creditors, whom he regards as worthy of such special favors. The honest exercise of a clear, legal right does not show an illegal intent.

The evidence shows that the defendant grantors were largely insolvent, and that they believed that they would be unable to meet their indebtedness if they were harassed with the costs and inconveniences of numerous suits, and their property was sacrificed by forced sales under legal process. They hoped to save their creditors from loss and themselves from financial ruin. They stipulated for no benefit for themselves until all the debts were paid, and their object seems to have been to make their property bring the best prices possible for the primary advantage of their creditors.

"No schedule of debts or of creditors attached to the deed, and no inventory taken."

Under the provisions of the bankrupt act bankrupts were required to set forth a schedule of all debts and creditors, and an inventory of their property, but I am not aware of any provision or principle of our state statute or common law that requires a grantor in a deed of trust to set forth a schedule of the property conveyed where there is a sufficient general description of such property, or to attach to such deed a schedule of debts and creditors. The debts and names of creditors who are in preferred classes are set forth in this deed, and then there is a general provision for all other creditors; and this is sufficient certainty of description for the purpose of the trusts declared.

It appears from the evidence that an inventory was taken, just before the deed was executed, in April, and another was taken some months afterwards. It seems to me that prudent and cautious trustees would have taken an inventory for their own protection, and as a means of making a ready settlement of the trusts which they had assumed. But I do not regard the failure, under all the circumstances of the transaction, as evidence of fraud in the execution of the deed. The trustees became personally liable for all the property conveyed,

and their failure to make an inventory manifests a high confidence in the honesty of the grantors, for whom they were indorsers for a large amount in the banks, and for whose misapplication of the property they would have suffered injury as indorsers, and have been responsible as negligent trustees.

"The relationship of the defendants."

I have already briefly referred to this matter, but I will further state the general principle of law, that a person who successfully assails a conveyance upon this ground must show that the debts secured are not *bona fide*, or that there is something feigned or simulated, or that the parties were influenced by some sinister motive or design. The trustees in this deed are relatives of the grantors, but they have no direct interest as creditors, and the debts secured upon which they are indorsers are admitted to be *bona fide*, and were incurred for the benefit of the firm. There is no direct evidence, or any inferences which may fairly arise from the alleged discrepancies or contradictory statements of the defendants, that they entered into any collusion in executing the deed for the purpose of defrauding the creditors of the grantors.

"The defendants' belief that the firm was solvent."

The decided preponderance of evidence shows that the defendant trustees were not satisfied as to the solvency of the defendant grantors, and they were desirous of having the debts secured upon which they were indorsers. The answers of the defendant trustees are directly responsive to the charges of the bill, and are evidence for them which will be sufficient for their protection, unless contradicted by full and satisfactory evidence on the part of the plaintiff, who alleges fraud. Fraud in fact cannot be presumed or inferred without proofs, and the party who makes the charge must prove it by direct evidence, or by circumstances which strongly indicate fraud. The trustees in their answers deny all knowledge or notice of any fraudulent purpose of the grantors, and of all facts from which they could reasonably infer such purpose. Their declarations would not be sufficient to rebut any legal presumption of fraud arising upon the face of the deed, but, upon the question of fact as to a fraudulent intent of the parties in the execution of the deed, the responsive answers are entitled to their full weight as evidence. The burden of proof is upon the plaintiff to establish a fraudulent intent, and the proof he offers is not sufficient to contradict or overcome the responsive answers to the charges of the bill. To render a deed founded on a valuable consideration void for fraud, both parties must concur in a fraudulent intent, or the grantee must have notice of such intent, or must in some way be privy to the wrongful design.

The evidence shows that the grantors represented themselves as solvent at the time of the execution of the deed of trust, and it also shows that they knew that they were greatly embarrassed, their cash sales were small, they could not readily collect the money due them, and were unable to meet their debts at maturity. Their belief of solvency

appears to have been induced by the plausible and eager anticipations—generally entertained by debtors in failing circumstances—that by indulgence and good management in making sales of their goods at fair prices, and collecting the debts due them, they would be able in a short time to relieve themselves from financial embarrassments. The evidence further shows that their property was overestimated in value, and they did not have the means and resources from which enough could be realized to pay all their debts under forced sales by execution, and that their purpose in gaining time to dispose of their goods without ruinous sacrifice was for the primary benefit of creditors, and not for their personal advantage.

Upon a careful review of all the facts and circumstances developed by the evidence, I am of opinion that the plaintiff by his proofs has failed to sustain the allegations of fraud against the defendants, as stated in his bill. I deem it unnecessary to consider the motion of the defendants' counsel to dismiss the bill for the defects and irregularities specified in the brief and argument. Let the bill be dismissed.

BOND, J., concurs.